UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KALEN P.,[1]

        **Plaintiff,**

  v.                                    Civil Action 3:24-cv-284
                                           Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## OPINION AND ORDER

Plaintiff, Kalen P. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB"). This matter is before the Court for a ruling on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 10), Plaintiff's Reply (ECF No. 11), and the administrative record (ECF No. 8). For the reasons that follow, Plaintiff's Contention of Errors is **SUSTAINED**, and this matter is **REMANDED** pursuant to Sentence 4 § 405(g).

### I.    BACKGROUND

Plaintiff filed a DIB application in October 2022, alleging that he became disabled on October 27, 2021. Plaintiff's application was denied initially and upon reconsideration. On March 11, 2024, an Administrative Law Judge ("ALJ") held a telephonic hearing at which Plaintiff, represented by counsel, and a Vocational Exert ("VE") both appeared and testified. The

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

ALJ subsequently issued an unfavorable determination on May 23, 2024, which became final when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. He asserts that the ALJ erred in several ways, including that the ALJ erred when considering and assessing prior administrative findings from state agency psychological reviewers, Karla Delcour, PhD. and Aracelis Rivera Castro, PsyD. (Pl.'s Statement of Errors 13–15, ECF No. 9.) Because the Court finds that this contention of error has merit, it need not reach Plaintiff's other assertions of error.

## II. THE ALJ'S DECISION

On May 23, 2024, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 17–32.) The ALJ initially found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2026. (*Id*. at 20.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since the alleged onset date of October 27, 2021. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: traumatic brain injury

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

("TBI"); hearing loss; tinnitus; cervical radiculopathy status post fusion; lumbar degenerative disc disease; hypertension; obesity; posttraumatic stress disorder ("PTSD"); anxiety; and depression. (*Id*.) The ALJ also found that Plaintiff's gastroesophageal reflux disease ("GERD") was not severe. (*Id*. at 21.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 25.) Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC"),[3] in relevant part, as follows:

> After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) subject to the following limitations: . . . can perform simple routine tasks . . . not at a production rate pace and without strict performance quotas . . . occasional superficial contact with coworkers and supervisors (superficial contact is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice) . . . no interaction with the general public; and . . . occasional changes to a routine work setting defined as 1-2 per week.

(*Id.* at 27.)

At step four, the ALJ relied upon testimony from the VE to determine that Plaintiff could not perform his past relevant work. (*Id.* at 30.) At step five, the ALJ, again relying upon testimony from the VE, found that jobs existed in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and RFC capacity could perform, including the representative occupations of housekeeping cleaner, assembler-small products, and production assembler. (*Id.* at 30–31.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 32.)

---

[3] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. § 404.1545(a)(1), (b)–(c).

3

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Even though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As noted above, Plaintiff contends that the ALJ erred when considering prior administrative findings from state agency psychologists, Drs. Delcour and Castro. (Pl.'s Statement of Errors 13–15, ECF No. 9.) Specifically, Plaintiff contends that the ALJ erred by failing to properly explain his analysis of their findings and that this was error, in part, because the two reviewers found that Plaintiff had different social interaction limits. The Court agrees.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. 20 C.F.R. § 404.1545(a)(1). The governing regulations[4] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. *Id*. § 404.1513(a)(1)–(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." *Id*. 404.1520c(a). Instead, when evaluating the persuasiveness of medical opinions and prior administrative findings, an ALJ must consider the following factors: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id*. § 404.1520c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how he or she considered them. *Id*. § 404.1520c(b)(2). When

---

[4] Because Plaintiff's SSI application was filed in 2022, it is governed by regulations that apply to applications filed after March 27, 2017.

5

considering supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support a medical opinion, the more persuasive the ALJ should find the medical opinion. *Id*. § 404.1520c(c)(1). When considering consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. *Id*. § 404.1520c(c)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . " *Id*. § 404.1520c(b)(3).

> Here, the ALJ summarized Dr. Delcour's findings, writing as follows:
>
> Karla Delcour, Ph.D., evaluated the claimant's mental condition on December 1, 2022 based on the evidence of record on behalf of the Division of Disability Determination (DDD). In Dr. Delcour's opinion, the claimant has the "severe" mental impairments of depressive, bipolar, and related disorders and trauma- and stressor-related disorders. The claimant has no limitation in his ability to understand, remember, or apply information. He has a marked limitation in his ability to interact with others. He has a moderate limitation his ability to concentrate, persist, or maintain pace. The claimant has a mild limitation in his ability to adapt or manage oneself. Dr. Delcour concluded the claimant retains the mental capacity to perform tasks without fast-pace or production quotas in a setting where interactions with coworkers, supervisors, and the general public is on a brief basis (Exhibit 1A).

(R. at 22.) The ALJ also summarized Dr. Castro's findings, writing as follows:

> On reconsideration, Aracelis Castro, Psy.D. adjusted these findings to moderate limitations in the claimant's ability to interact with others and adapt or manage oneself, and as such, she found the claimant retains the capacity to perform 1-3 step routine tasks that are not fast paced in a static work setting where interaction with others is on a superficial basis.

(*Id*.) The ALJ then analyzed those findings and indicated that "many" of them had been

6

incorporated into Plaintiff's RFC. The ALJ wrote the following:

> Collectively, many of these suggested limitations have been incorporated into the mental residual functional capacity discussed herein. Limiting the claimant to performing 1-3 step routine – interpreted as simple routine – tasks with no pace/production demands is reasonable given the claimant's complaints of issues with poor concentration and memory (Exhibits 9F at 291 / 3E at 7). Dr. Delcour found the claimant retains the mental capacity to interact with coworkers, supervisors, and the general public on a brief basis which Dr. Castro then reduced to a superficial basis, both limitations which require vocationally definition. The claimant's most routinely noted psychological symptom seems to arise from his chronic difficulty relating to others due to the distress resulting from PTSD (Exhibit 7F at 1). Therefore, when considered together, the restrictions imposing only occasional superficial contact with coworkers and supervisors with no public interaction (included in the residual functional capacity discussed below) are sufficient to ensure that any tasks the claimant would be compelled to have as part of his actual job duties fully accommodate any difficulties he might experience with maintaining effective social interactions in that regard. Finally, the claimant has not had ER visits or required psychiatric inpatient stays, but in light of his history of dedicated mental health treatment, a moderate limitation on his ability to adapt to workplace change is warranted.

(*Id*. at 22–23.) As this discussion demonstrates, the ALJ did not explicitly explain how persuasive the reviewers' findings were. Nor did he explicitly discuss the supportability or consistency factors.

Nevertheless, in this discussion, the ALJ accurately acknowledged that the state agency reviewers had different social interaction findings. The ALJ noted that Dr. Delcour found that Plaintiff was limited to "brief" interactions, while Dr. Castro found that Plaintiff was limited to "superficial" interactions. (R. at 22–23.) The ALJ also explained that he adopted Dr. Castro's superficial interaction finding, and that he defined the term superficial when doing so. (*Id*.) The ALJ did not, however, adopt Dr. Delcour's brief interaction finding, nor did he explain that omission. Instead, the ALJ included in Plaintiff's RFC a limitation to "occasional" interactions without explaining why he perhaps substituted an occasional interaction limit for Dr. Delcour's brief interaction limit.

7

To the extent the ALJ intended such a substitution, the Court does not find that the occasional interaction limit in Plaintiff's RFC accounts for Dr. Delcour's brief interaction limit. Although the term "brief" is not defined in the Dictionary of Occupational Titles ("DOT") or the Selected Characteristics of Occupations ("SCO"), like "superficial," it is generally understood by its common meaning—short in duration. *See Obrien v. Colvin*, No. 1:15-cv-536, 2016 WL 2755459, at *6–7 (M.D.N.C. May 11, 2016) (finding that terms like "contact," "brief," and "superficial" are sufficiently precise based on everyday usage). This Court has also recognized that "brief" refers to the *length* of an interaction, not its *frequency*. *Elaine K. v. O'Malley*, No. 2:23-cv-1825, 2024 WL 4023217, at *4 (S.D. Ohio Sept. 3, 2024) (quoting *Oxford English Dictionary* (Dec. 2023) (defining "brief" as "quickly passing away or ending")). In contrast, the term "occasional" refers to how often an interaction occurs. *Charlee N. A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3085, 2023 WL 312791, at *4 (S.D. Ohio Jan. 19, 2023), *report and recommendation adopted*, 2023 WL 1766096 (S.D. Ohio Feb. 3, 2023). Because these limits refer to different dimensions of social functioning, they are not interchangeable. *Id*. (finding that "[an] ALJ's limitation of 'occasional' interaction does not accommodate a limitation that each interaction be 'brief or short in duration because the term 'occasional' is a well-recognized, work-related limitation pertaining to the frequency of social interactions."); *Elaine K.*, 2024 WL 4023217, at *4 (same).

To be clear, the ALJ was not required to adopt Dr. Delcour's findings or include a brief interaction limit in Plaintiff's RFC. Instead, the ALJ was required to consider Dr. Delcour's findings using all the regulatory factors and to articulate how he considered the supportability and consistency factors. The ALJ failed to do so. Additionally, the ALJ indicated that "most" of the reviewers' findings were included in Plaintiff's RFC, and thus implied that he found them at

8

least partially persuasive. But it is unclear if the ALJ rejected the brief interaction limit for legitimate record-based reasons, if he overlooked it, or if he failed to appreciate the distinction between brief and occasional interactions. In the absence of any discussion of the supportability and consistency factors, the Court is left to speculate about the ALJ's reasoning, which prevents meaningful judicial review in this case.

## V.  CONCLUSION

For all the foregoing reasons, the Court finds that Plaintiff's contention of error regarding the ALJ's consideration and articulation of the state agency psychological reviewers' findings has merit. Accordingly, the Plaintiff's contentions of error are **SUSTAINED**, and this matter is **REMANDED**. Although the Court does not reach Plaintiff's other contentions of error, upon remand, they may be considered if appropriate.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE